**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **FREESTATE HEALTHCARE** | * | |
| **INSURANCE COMPANY, LTD.** | * | |
| | * | |
| **Plaintiff** | * | |
| | * | |
| **v.** | * | **Civil No. CCB-06-2951** |
| | * | |
| **CHESTER RIVER HEALTH** | * | |
| **SYSTEM, INC., ET AL.** | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

**\*\*\*\*\***

**MEMORANDUM**

Plaintiff, Freestate Healthcare Insurance Company, Ltd. ("Freestate"), moves for partial summary judgment, and defendants, Chester River Health System, Inc. (the "Health System") and Chester River Hospital Center, Inc. (the "Hospital") (collectively "defendants"), oppose the motion and cross-move for partial summary judgment in this insurance dispute based on an action arising from a medical incident at the Hospital on September 14, 2004.[1] Specifically, Freestate asks this court to declare that it is not obligated to provide coverage under the terms of Exclusion L it issued under Policy No. 2006-01, a professional liability insurance claims-made policy covering the period of March 1, 2006 to March 1, 2007, whereas the defendants argue that

---

[1] The underlying action, *Charlotte Smith, through her parent and next friend, Lena Walker v. Chester River Hospital Center, Inc.*, Case No. 14-C-06-006755, was filed on May 9, 2006 and is currently pending in the Circuit Court for Kent County, Maryland. (Pl.'s Mot. for Partial Summ. J., Ex. 1.) On September 14, 2004, Smith was admitted to the Hospital complaining of a severe headache and was provided with an intravenous medication, Dilaudid, at approximately 6:30 a.m., in response to which she suffered respiratory arrest that was not discovered until 7:20 a.m., at which time a Code was called and Hospital staff resuscitated her. (Am. Compl. ¶ 11.) Smith, despite the resuscitation, had already suffered a prolonged period of oxygen deprivation and had fallen into a coma. (*Id.*) She was discharged from the hospital on October 19, 2004 to a nursing home, where she remained on a ventilator in a comatose state until her death on November 3, 2006. (Defs.' Opp'n to Pl.'s Mot. for Partial Summ. J. and Defs.' Cross-Mot. for Summ. J. at 9.)

they are entitled to coverage. The motions have been fully briefed, and no hearing is necessary.

*See* Local Rule 105.6.

For the reasons that follow, this court will deny Freestate's partial summary judgment

motion and grant the defendants' cross-motion for partial summary judgment.

## I. Background

The policy at issue in this case, Policy No. 2006-015, was a renewal of prior coverage

that commenced on July 1, 2005. It provided retroactive insurance coverage for claims stemming

from medical incidents occurring as far back as August 1, 1985. (Pl.'s Mot. for Partial Summ. J.,

Ex. 2, Policy No. 2006-015, FS 0028.) Exclusion L of the policy, a prior knowledge exclusion,[2]

states that insurance coverage does not apply:

> to any liability for a written demand for damages, money or services or service of
> suit, or a specific circumstance involving a particular person or organization
> regarding a medical incident, occurrence or offense whose circumstances were
> known to the insured or any insurer prior to the first date of continuous coverage
> provided by the Company for such insured[.]

(*Id*. at FS 0026.) The present issue in this case is what type of knowledge standard, *subjective*

(i.e., whether the defendants *actually knew* about the Smith claim or its likelihood at the time

they entered into the policy) or *objective* (i.e., whether a *reasonable insured* with defendants'

knowledge would or should have known that the Smith claim existed or was forthcoming),

applies to Exclusion L of the policy. Freestate argues that the standard is objective, relying in

part on language from the notice provisions of the policy, whereas the Defendants, relying

primarily on the plain language of the exclusion, argue that the standard is subjective.

---

[2] In general, prior knowledge exclusions exclude coverage for claims of which the insured had knowledge prior to entering the insurance policy.

**II. Analysis**

**A. Standard of Review**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment

shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified this does not mean that any factual dispute will defeat the

motion:

> By its very terms, this standard provides that the mere existence of *some* alleged
> factual dispute between the parties will not defeat an otherwise properly
> supported motion for summary judgment; the requirement is that there be no
> *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest

upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts

showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club,*

*Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).

The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all

reasonable inferences in her favor without weighing the evidence or assessing the witness'

credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002),

but the court also must abide by the "affirmative obligation of the trial judge to prevent factually

unsupported claims and defenses from proceeding to trial."  *Bouchat*, 346 F.3d at 526 (internal

quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## B. Applicable Law

Maryland law, which applies in this diversity action, requires that a court interpreting an insurance policy construe the contract as a whole to determine the intent of the parties. *Clendenin Bros., Inc. v. U.S. Fire Ins. Co.*, 390 Md. 449, 889 A.2d 387, 393 (2006). A court is to give terms within the contract their usual meaning unless the parties present evidence that the terms have a unique or technical meaning. *Id.* Additionally, Maryland courts generally examine the purpose and character of a contract as well as the facts and circumstances of the parties at the time the contract was put into effect. *Id.* If the language in a contract is ambiguous, where ambiguous is defined such that a "reasonable person" would find a term to be "susceptible to more than one meaning[,]" a court may consult extrinsic evidence. *Id.* Only if consultation of extrinsic evidence does not resolve the ambiguity does a court generally resolve the ambiguity against the drafter of the contract, provided no "material evidentiary factual dispute exists." *Id.* at 394. *See also Baltimore Gas and Elec. Co. v. Commercial Union Ins. Co.*, 113 Md. App. 540, 688 A.2d 496, 503 (1997).

## C. Discussion

Freestate directs the court's attention to cases within the Fourth Circuit concerning professional malpractice insurance claims. Freestate is correct that these cases concluded, based on a close reading of the plain language of the policies and their respective prior knowledge exclusions, that an objective knowledge standard applied to the prior knowledge exclusion under review.  The

prior knowledge exclusions in these cases are distinguishable from Exclusion L, however, because they all explicitly used objective standard language, namely the terms "reasonable" and "foreseeable."

For example, in *Culver v. Continental Insurance Company*, 11 Fed. Appx. 42, 1999 WL 503527 (4th Cir. 1999), the Fourth Circuit, relying on the language of the claims-made policy exclusion at issue, concluded that the "plain language of the application excludes coverage for *any* claim, meritorious or otherwise, that an applicant could have *reasonably foreseen* at the time the policy [was] issued. The policy language invokes an objective standard of *foreseeability*[.]" *Culver*, 11 Fed. Appx. at 45-46 (emphasis added).[3] Similarly, in *Maynard v. Westport Insurance Corporation*, 208 F. Supp. 2d 568 (D. Md. 2002), the exclusion at issue stated that the claims-made policy would not apply to a claim stemming from "any act, error, omission, circumstance or personal injury occurring prior to the effective date of this policy if an insured at the effective date *knew or could have reasonably foreseen* that such a act, error, omission, circumstance or personal injury might be the basis of a claim." *Maynard*, 208 F. Supp. 2d at 571 (emphasis added).[4] Also, in *Ball v. NCRIC*, 120 Fed. Appx. 965, 2005 WL 176647 (4th Cir. 2005) (per

_____

[3] Briefly summarized, the Fourth Circuit in *Culver* held that: (1) letters a client and her attorney sent to the client's former attorney who had allegedly sexually and financially exploited the client while representing her in a divorce proceeding were 'claims' within the meaning of the attorney's malpractice insurance policy, but only if the insured attorney did not have a reasonable basis to foresee that a claim was forthcoming at the time attorney entered into the policy; and (2) the policy at issue used an objective standard to determine whether claims were foreseeable. *Culver*, 11 Fed. Appx. at 45. The exclusion in that case stated that the claims-made policy would cover claims made during the policy period so long as the "Named Insured . . . had no *reasonable* basis to believe that Insured had breached a professional duty or to *foresee* that a Claim would be made against the Insured." *Culver v. Cont'l Ins. Co.*, 1 F. Supp. 2d 545, 546 (D. Md. 1998) (quoting the policy) (emphasis added). The Fourth Circuit applied an objective standard and upheld the district court's determination that the letters the attorney received, which threatened a lawsuit against him, gave the attorney "reason to foresee" a claim and upheld summary judgment in favor of the insurer. *Culver*, 11 Fed. Appx. at 45.

[4] In *Maynard*, plaintiffs were a married couple residing in Maryland who brought suit against the malpractice insurer of their former attorney against whom they had won a default judgment for legal malpractice. *Id*. at 570. The attorney had failed to file a Chapter 13 bankruptcy petition on time, which, combined with other actions, lead to the foreclosure of the Maynards' home. *Id*. By the time the attorney had applied for a second legal malpractice policy and failed to

curiam), the exclusion at issue did not provide liability coverage "for any potential claim against the insured of which the insured is aware, or *reasonably should have been aware*, as of the date this policy is issued, regardless of whether or not such claim has yet been made or reported to any insurer." *Ball*, 120 Fed. Appx. at 970 (emphasis added).[5] And, most recently, in *Westport Insurance Corporation v. Albert*, 208 Fed. Appx. 222, 2006 WL 3522500 (4th Cir. 2006), the prior knowledge exclusion stated policy coverage would be excluded from "any act, error, omission, circumstance, or 'personal injury' occurring prior to the effective date of this 'policy' if any insured at the effective date *knew or could have reasonably foreseen* that such act, error, omission, circumstance or 'personal injury' might be the basis of a 'claim.'" *Westport*, 208 Fed. Appx. 222, 224 (emphasis added).[6]

---

disclose the Maynards' potential legal malpractice claim, the Maynards had already complained to the District of Columbia Bar Counsel. *Id*. Plaintiffs conceded that "an *objectively reasonable attorney* would or should have known of the potential malpractice claim" even though the attorney did not make this disclosure to the malpractice insurer. *Id*. at 571 (emphasis added). Combining this concession with the plain language of the policy, the court concluded that the malpractice insurance exclusion applied. *Id*. at 576.

[5] The plaintiff in *Ball* was a patient bringing suit against her former physician's insurer seeking satisfaction of a malpractice liability judgment she obtained against the physician who had drugged and sexually assaulted her. *Id*. at 966. Relying on a plain reading of the language of the policy, and the exclusion in particular, the Fourth Circuit stated that "the policy cannot be considered ambiguous simply because it includes provisions that operate to preclude coverage that would otherwise be granted." *Id*. at 971. Reviewing the facts of the case and applying an objective standard to the prior knowledge exclusion, the Fourth Circuit upheld the district court's summary judgment ruling in favor of the insurer because, even though the patient had not yet sued the former physician or made a complaint, the exclusion "by its terms applies to *potential* claims of which the insured '*reasonably should have been aware*,' whether or not the claim ha[d] actually been made." *Id*. at 972 (emphasis added).

[6] In *Westport*, a nephew who was the primary beneficiary under his deceased aunt's will faced a lawsuit from the deceased aunt's personal representative, a licensed attorney and professional accountant, who challenged a private annuity agreement created by the nephew that had allowed his aunt to avoid certain estate and gift taxes. *Id*. The nephew responded by: writing a letter to the attorney accusing him of wasting estate funds; filing a petition with the Superior Court of the District of Columbia to remove the attorney as personal representative and filing a motion to expedite the removal; and, bringing his own lawsuit against the attorney and his law firm alleging accounting and legal malpractice. *Id*. The attorney's malpractice insurer argued, in part, that allegations the nephew made in his removal petition "would have put any reasonable accountant on notice that a malpractice suit was forthcoming." *Id*. at 225. The Fourth Circuit cited *Maynard* to conclude that "an objective standard of reasonableness applie[d]" to the prior knowledge exclusion. *Id*. Reviewing the facts in the case, the Fourth Circuit upheld summary judgment in favor of the insurer, concluding that the attorney and his law firm "should have foreseen" the malpractice suit based upon the allegations the nephew made in his removal petition and reported it to the insurer. *Id*. at 226.

Freestate admits the difference between the policy language of Policy No. 2006-015 and Fourth Circuit precedent with reference to two of these cases when it states that the "policy language in *Ball* and *Culver* contained more explicit provisions on the applicable standard than the policy at issue here." (Pl.'s Mot. for Partial Summ. J. at 13.) This significant distinguishing factor – the use of objective language in the exclusion rather than subjective language – leads to the conclusion that the knowledge standard to be applied to Exclusion L is a subjective one. *See Colliers Lanard & Axilbund v. Lloyds of London*, 458 F. 3d 231, 237 (3d Cir. 2006) (applying dual-standard test based on plain language of exclusion, applying subjective standard to first exclusion condition stating "the insured had no knowledge of any suit").

There is no mention in Exclusion L of a foreseeability or reasonableness requirement. As stated by the Maryland Court of Appeals, "We can not rewrite the policy and put into it terms, conditions, and provisions which are not there, but must take it as we find it; and, 'when the terms of the contract are clear and unambiguous, courts have no right to make new contracts for the parties, or ignore those already made by them, simply to avoid seeming hardships.'" *Landwehr v. Cont'l Life Ins. Co.*, 159 Md. 207, 150 A. 732, 734 (1930) (quoting *Joffe & Mankowitz v. Niagara Ins. Co.*, 116 Md. 155, 81 A. 281, 282 (1911)). Reliance on the plain language of Exclusion L, rather than inserting terms that are not present in the exclusion or even incorporated by reference, would be in keeping with Fourth Circuit precedent. *See, e.g.*, *Limbach Co. LLC v. Zurich Am. Ins. Co.*, 396 F.3d 358 (4th Cir. 2005) (per curiam) (relying on plain language of a "your work" exclusion in a commercial liability policy to conclude that it "only excludes coverage for damage to an insured's work that arises out of the insured's faulty workmanship" but did not exclude coverage for damage to a third party's work).

- 7 -

Whereas the courts in *Culver, Maynard, Ball* and *Westport* focused on the language of the exclusion itself to conclude that an objective standard would be appropriate, Freestate also argues in favor of an objective standard by pointing to the notice provisions of the policy. (Pl.'s Mot. for Partial Summ. J. at 9.)  Under the terms of the policy at issue, a claim is made when the insured "first gives written notice to the Company or its authorized representative that a claim has been made" or "when the insured first gives written notice to the Company or its authorized representative of specific circumstances involving a particular person or organization which may result in a claim." (*Id*., Ex. 2, Policy No. 2006-015 at FS 0009.) Freestate reasons that because the notice provisions in the policy are activated by "specific circumstances" that "may" result in a claim,[7] the knowledge standard in the policy as a whole, and in particular with regards to Exclusion L, should be construed as objective. (*Id*. at 9.)

However, the reading of Exclusion L that Freestate proposes requires reading "specific circumstances" in isolation from the rest of the language of the exclusion, which requires an insured to *actually* receive notice of a claim. (*Id*., Ex. 2, Policy No. 2006-015 at FS 0026.) Moreover, as noted by Defendants, "a hospital almost always will have some 'knowledge' through the medical record and its staff of all care rendered[,]" so the effect of reading the term "specific circumstances" in the notice provisions in isolation from Exclusion L, as Freestate proposes, would greatly expand the scope of the exclusion. (Def.'s Reply Mem. in Supp. Cross-Mot. for Partial Summ. J. at 4.)

Even assuming that it is appropriate to focus on the notice provision when interpreting Exclusion L, Freestate's argument does not prevail. According to the notice provision, notice is

---

[7] It is notable that even in the notice provisions of the policy there are no objective terms such as reasonable or foreseeable (e.g., "specific circumstances which the insured may reasonably foresee leading to a claim"). This fact weakens Freestate's argument.

received by an insured when a "claim shall be considered first made." (Pl.'s Mot. for Partial

Summ. J., Ex. 2, Policy No. 2006-015 at FS 0009.) And according to the definition of claim

under the terms of the policy, a claim means either:

> (1) a written notice or demand for damages, money or services or service of suit first received by an insured regarding a loss event, or

> (2) a specific circumstance involving a particular person or organization regarding a loss event first recognized by an insured.

(*Id*. at 0004.) The first definition is subjective in that it requires notice actually be "received" by

an insured. The second definition also implies a subjective understanding in that it requires a loss

event be "recognized" by an insured. Thus, under the policy language contained in the exclusion,

notice, and claim provisions of Policy No. 2006-015, it appears that a subjective knowledge

standard is appropriate.[8]

## III. Conclusion

For the reasons stated above, the motion for partial summary judgment brought by the

defendants will be granted as to the issue of insurance coverage and the motion for partial summary

judgment brought by Freestate will be denied. A separate order follows.


_____August 8, 2007_____          _____/s/_____
              Date                              Catherine C. Blake
                                              United States District Judge

---

[8]Consideration of all the provisions together distinguishes this case from the decision in *Gaston Memorial Hospital, Inc. v. Virginia Insurance Reciprocal*, 80 F. Supp. 2d 549 (W.D.N.C. 1999).